UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| BILLY KEITH GIBSON, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:16-CV-509-TAV-HBG |
| | ) | |
| G.W. "BUD" McCOIG, | ) | |
| Sheriff of Jefferson County, Tennessee, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The Court is in receipt of a pro se prisoner's civil rights complaint under 42 U.S.C. § 1983 [Doc. 2] and a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, Plaintiff's motion for leave to proceed *in forma pauperis* will be **GRANTED**, no process shall issue, and this action will be **DISMISSED** for failure to state a claim upon which relief may be granted under § 1983.

**I.     FILING FEE**

It appears from the motion that Plaintiff lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, the Court will **GRANT** Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1]. Because Plaintiff is an inmate in the Jefferson County jail, he will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account at that facility will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Knoxville, Tennessee 37902, as an initial partial payment, twenty percent (20%) of the greater of either the average monthly deposits or the average monthly balance in the account for the six months immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1).

After full payment of the initial partial filing fee, the custodian shall submit twenty percent of Plaintiff's preceding monthly income (or income credited to the account), but only when the amount in the account exceeds ten dollars, until the full $350 fee has been paid to the Clerk. 28 U.S.C. § 1915(b)(2). The Clerk will be **DIRECTED** to send a copy of this Memorandum Opinion and accompanying Order to the custodian of inmate accounts at the Jefferson County jail to ensure compliance with these fee-assessment procedures. The Clerk also will be **DIRECTED** to forward a copy of the Order to the Court's financial deputy.

## II. SCREENING STANDARDS

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or involve a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim,

2

however. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim unsupported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### III. PLAINTIFF'S ALLEGATIONS

In his complaint, Plaintiff makes the following allegations. On July 13, 2016, Plaintiff was arrested for a violation of the Sex Offender Registry Act, booked into the Jefferson County jail, and placed in a holding cell for ten days, without a mattress and with only two blankets—one to place on the concrete floor and one with which to cover up [Doc. 2 pp. 3–4]. The next day, Plaintiff began to fill out a medical request because he was experiencing a sharp pain near his shoulder and neck [*Id.* at 4]. At some point, Plaintiff was placed in E-Block and was assigned to the top bunk [*Id.*]. Having to pull himself up to reach the top bunk worsened Plaintiff's pain for several days [*Id.*]. For three weeks, Plaintiff has suffered unbearable pain and, though he has asked to see the doctor every week since his injury, he did not get to see the doctor because, each week, he has been told that the doctor did not show up [*Id.*].

Plaintiff started writing grievances to Defendant Sheriff G. W. McCoig and Captain Ricky Oakes, the latter of whom has not been named as a defendant [*Id.*]. On August 13, 2016, Plaintiff wrote another grievance to Defendant concerning the matters complained of in this pleading [*Id.* at 6]. Additionally, Plaintiff wrote two letters complaining about his neck and shoulder pain and

3

his undisclosed mental health issues, and he asked to see the doctor for his problems [*Id.*]. It is unclear from Plaintiff's contentions as to whether he sent those letters to Defendant or to Captain Oakes [*Id.*].

Plaintiff makes the following complaints: Jefferson County Sheriff Department Rules and Regulations contain sixteen rules, but the fifteenth rule that involves the pod's cleaning supplies is not being enforced [*Id*]. The Head Officer in Charge does not wear gloves when he passes out medications to inmates nor do the trustees who serve meals to inmates wear gloves [*Id.* at 5]. The food has grown cold by the time it reaches Plaintiff and inmates housed in his pod because their pod is the last one to eat [*Id.*]. There is no law library access [*Id.*].

Plaintiff claims that sex offenders, who are housed in E-Block, are discriminated against by not being permitted to work [*Id.*]. Plaintiff posits that sex offenders should be allowed to receive work credits, as do inmates in other blocks [*Id.*]. Plaintiff has submitted three petitions, seeking to have his name removed from the Sex Offender Registry [*Id.*]. The first letter was returned to him because he was required to submit fingerprints to the Tennessee Bureau of Investigation ("TBI") [*Id.*]. His fingerprints were taken during his incarceration in the Jefferson County jail and were sent to the TBI, so Plaintiff has been told [*Id.*]. Plaintiff has received no response to the other two petitions he mailed from the Jefferson County jail [*Id.*].

Plaintiff contends that he is among a group of state inmates who are required to serve more than one year in the Jefferson County jail, and, like those other inmates, that he must pay outrageous costs for commissary items that cost next to nothing on the street [*Id.* at 6]. Plaintiff has received no response to the two letters he wrote to Curtis Owens, who also is not a named defendant, asking to speak with Mr. Owens before Plaintiff's court date [*Id.*]. The Jefferson County jail issues indigent packets that contain only two envelopes, two unlined, white blank

sheets of copy paper, two small bars of soap that do not last a week, and one small tube of Fresh Mint toothpaste [*Id.*]. Plaintiff heard a noise on the line while he was having a telephone interview with a staff member at the Helen Ross McNabb Center on August 15, 2016, and this has caused him to suspect that the interview may have been recorded [*Id.*].

For the wrongful treatment and conditions described above, Plaintiff seeks monetary relief, consisting of $20 for each night he slept on the concrete floor in the holding cell and $10,000 for each day of the three-week period he was told that he could see the doctor but did not get to see the doctor. Plaintiff also asks that his medical, physical, mental, and medication needs be met.

## IV. ANALYSIS

First, Plaintiff has only sued Defendant Sheriff. The complaint is not specific as to the capacity in which Defendant is being sued, whether in his official capacity, individual capacity, or both. A suit brought against a public official will not be construed as seeking damages against that defendant in his individual capacity unless such a claim for individual liability is clearly and definitely set forth in the pleading. *See Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir. 1995). The designation of individual capacity need not be explicit—though, of course, that is preferable—so long as the pleadings and other filed documents provide sufficient notice to a defendant that he is being sued as an individual. *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001).

Plaintiff has made no express designation of the capacity in which he is suing Defendant Sheriff. Nor has Plaintiff alleged anything in the pleading to indicate that he is suing Defendant in his individual capacity. Absent an indication—express or otherwise—that Defendant is being sued in his individual capacity, the Court must assume that he is being sued only in his official capacity. *Id.* at 772.

5

Suits against officers in their official capacities under § 1983 are equated with suits against the governmental entity itself, *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992), and "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978); *see also Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (observing that an official-capacity suit proceeds as though a plaintiff had sued the governmental entity a defendant represents). Indeed, if damages are awarded in a suit against a defendant in his official capacity, a plaintiff must look to the governmental entity to satisfy such a judgment. *Kentucky v. Graham*, 473 U.S. 159, 166 (1995).

The governmental entity Defendant represents is Jefferson County, Tennessee. To succeed in a suit against Jefferson County, Plaintiff must show that its policy, practice, or custom has caused him to sustain a constitutional injury. *Monell*, 436 U.S. at 691. In other words, to state a viable § 1983 claim against Jefferson County, Plaintiff must: (1) identify the policy, (2) connect the policy to Jefferson County itself, and (3) demonstrate that his injury was incurred because of the execution of that policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). While an inmate need not plead a theory of municipal liability with particularity, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–69 (1993), still he must give fair notice of the claim to a defendant. *Twombly*, 550 U.S. at 555.

Plaintiff's complaint does not give fair notice to Defendant McCoig that he might be held liable in his official capacity. This is so because Plaintiff fails to identify a policy to deprive Jefferson County jail inmates of medical care or to subject them to discrimination, to cold or unhygienic food, or to wire-tap their conversations with mental health care professionals. Of course, absent an allegation of the existence of any Jefferson County policy, Plaintiff has not

6

connected any policy to Jefferson County or shown that any policy led to his injuries. Moreover, the Court perceives no facts set forth in the complaint that would allow it to infer that Jefferson County is liable to Plaintiff for the alleged mistreatment he endured at the jail. Therefore, Plaintiff has not stated a claim against Defendant in his official capacity.

Furthermore, Plaintiff's allegations indicate that he is seeking to hold Defendant liable based on his supervisory position as the Jefferson County Sheriff. However, § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *Monell*, 436 U.S. at 691 (finding that liability under § 1983 may not be imposed simply because a defendant "employs a tortfeasor"). There must be "proof of personal involvement" to hold a supervisory defendant personally liable for constitutional wrongdoing. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun Cnty*., 408 F.3d 803, 817 n.3 (6th Cir. 2005)). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Taylor v. Mich. Dep't of Corr.,* 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis omitted)).

Plaintiff's only allegation against Defendant Sheriff is that he failed to respond to grievances and letters. The stated omissions are insufficient to show personal involvement in any alleged wrongdoing on the part of Jefferson County jail employees. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (explaining that "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)); *Shehee v. Luttrell*,

199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983); *Harbison v. Thompson*, No. 3:14-CV-0409, 2015 WL 1034626, at \*6 (M.D. Tenn. Mar. 10, 2015) (finding no liability of superior officers based on allegations that they did not respond to letters—the means through which a plaintiff sought to apprise them of a subordinate's conduct).

V.     **CONCLUSION**

Because Plaintiff has failed to state a claim against Defendant, this action will be **DISMISSED**. This dismissal will render Plaintiff's motion for the appointment of counsel [Doc. 3] moot, and the motion will thus be **DENIED** as moot. The Court will **CERTIFY** that, for reasons contained in this opinion, any appeal from this action would not be taken in good faith. Finally, the Court concludes that the dismissal of this case for failure to state a claim will count as a strike under the three-strikes rule in 28 U.S.C. § 1915(g).

**AN APPROPRIATE ORDER WILL ENTER**.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE